UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RANDY ALLEN ASHLOCK,<br><br>  Plaintiff,<br><br>  v.<br><br>KILOLO KIJAKAZI, acting Commissioner of Social Security,<br><br>  Defendant. | No. 1:21-cv-01687-GSA<br><br>**ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT COMMISSIONER OF SOCIAL SECURITY AND AGAINST PLAINTIFF**<br><br>**(Doc. 14, 15)** |

**I.   Introduction**

Plaintiff Randy Allen Ashlock ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for supplemental security income pursuant to Title XVI of the Social Security Act. The matter is before the Court on the parties' briefs which were submitted without oral argument to the United States Magistrate Judge.[1]  Docs. 14–15.  After reviewing the record the Court finds that substantial evidence and applicable law support the ALJ's decision.  Plaintiff's appeal is therefore denied.

**II.   Factual and Procedural Background[2]**

On March 13, 2018 Plaintiff applied for supplemental security income. AR 182–93. The Commissioner denied the application initially on April 12, 2018 and on reconsideration on June 28, 2018. AR 72, 83. Plaintiff requested a hearing which was held before an Administrative Law Judge (the "ALJ") on October 14, 2020. AR 33–53. On January 20, 2021 the ALJ issued a decision denying Plaintiff's application. AR 12–28. The Appeals Council denied review on October 26, 2021. AR 1–3. On November 23, 2021, Plaintiff filed a complaint in this Court. Doc. 1.

---

[1] The parties consented to the jurisdiction of a United States Magistrate Judge. *See* Docs. 6 and 8.
[2] The Court has reviewed the relevant portions of the administrative record including the medical, opinion and testimonial evidence about which the parties are well informed, which will not be exhaustively summarized here. Relevant portions will be referenced in the course of the analysis below when relevant to the parties' arguments.

### III. **The Disability Standard**

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted).

When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and quotations omitted). If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the

claimant is or is not disabled. 20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level. 20 C.F.R. § 416.920(a)-(f). While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy given her RFC, age, education and work experience. *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

### IV. The ALJ's Decision

At step one the ALJ found that Plaintiff had not engaged in substantial gainful activity since his application date. AR 17. At step two the ALJ found that Plaintiff had the following severe impairments: osteoarthritis, degenerative disc disease, and obesity. AR 18. At step three the ALJ found that Plaintiff did not have an impairment or combination thereof that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 18.

Prior to step four the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. 404.1567(b) with the following limitations: "can perform seated light positions;" can stand and walk four out of eight hours; can occasionally climb ramps and stairs and never climb ladders, ropes, or scaffolds; can frequently balance or stoop; can occasionally crouch, kneel, and crawl; and finally would require a cane to ambulate. AR 20.

At step four the ALJ concluded that Plaintiff had no past relevant work. AR 25. At step five, in reliance on the VE's testimony, the ALJ concluded that Plaintiff could perform other jobs existing in significant numbers in the national economy, namely: cashier, small products assembler, and electrical assembler. AR 26. Accordingly, the ALJ concluded that Plaintiff was not disabled

at any time since his application date.  AR 28.

### V. Issues Presented

Plaintiff asserts two claims of error: 1) that the ALJ erred in relying on the non-examining opinions of the agency's Disability Determination Service (DDS) doctors who did not have access to subsequent documents concerning his left knee and lumbar spine impairments, and should have further developed the record with a consultative examination or consulted with a medical expert at the administrative hearing; and 2) that the ALJ erred in rejecting the opinion of his treating neurosurgeon Dr. Beauchman.  The arguments are interrelated and will be addressed together

#### A. Applicable Law

Before proceeding to step four, the ALJ must first determine the claimant's residual functional capacity.  *Nowden v. Berryhill*, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018).  The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  The RFC must consider all of the claimant's impairments, including those that are not severe.  20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96–8p.

A determination of residual functional capacity is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner.  *See* 20 C.F.R. §§ 404.1527(d)(2) (RFC is not a medical opinion), 404.1546(c) (identifying the ALJ as responsible for determining RFC).  "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001).  In doing so, the ALJ must determine credibility, resolve conflicts in medical testimony and resolve evidentiary ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995).

"In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record such as medical records, lay evidence and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins,* 466 F.3d at 883*. See also*

4

20 C.F.R. § 404.1545(a)(3) (residual functional capacity determined based on all relevant medical and other evidence). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

For applications filed on or after March 27, 2017, the new regulations eliminate a hierarchy of medical opinions, and provide that "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c(a). Rather, when evaluating any medical opinion, the regulations provide that the ALJ will consider the factors of supportability, consistency, treatment relationship, specialization, and other factors. 20 C.F.R. § 404.1520c(c). Supportability and consistency are the two most important factors and the agency will articulate how the factors of supportability and consistency are considered. *Id.*

The RFC need not mirror a particular opinion; it is an assessment formulated by the ALJ based on all relevant evidence. *See* 20 C.F.R. §§ 404.1545(a)(3). The ALJ's duty to further develop the record is triggered only where the evidence is ambiguous or inadequate to allow for proper evaluation of the evidence. 20 C.F.R. §404.1527(c)(3); *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001).

**B.    Analysis**

Dr. Bobba reviewed Plaintiff's medical file at the initial level on April 12, 2018 and opined that he was capable of medium level work with some postural limitations. AR 67-68. Dr. Khong reviewed Plaintiff's medical file at the reconsideration level on June 28, 2018 and opined that he was capable of light work with two to four hours of standing and walking due to high body mass index and knee effusion with deficient cartilage. AR 79. Both DDS doctors reviewed records

concerning Plaintiff's right knee impairment, but not records concerning his left knee impairment or spinal impairment which were generated thereafter.

Plaintiff has a history of right knee surgery. A June 4, 2018 a right knee MRI showed extensive abnormalities such as complete loss of articular cartilage, medial meniscus tears, and large joint effusion with chronic disruption of the ACL. AR 287–288. A September 2018 left knee MRI also showed extensive abnormalities such as complete disruption of the ACL, medial meniscus tears, grade III MCL sprain, and lateral patella subluxation. AR 303. A September 2019 left knee MRI showed additional abnormalities such as a Baker's cyst. AR 326.

On November 14, 2019, Dr. Beauchman performed a left meniscectomy surgery. AR 327. Post-op, Plaintiff attended physical therapy and his pain was reportedly well controlled. AR 320–21. Plaintiff then fell off a motorcycle in March 2020. AR 322. Subsequent MRI showed additional abnormalities including lateral meniscus tears. AR 310. He followed up in May 2020 but chose to defer additional surgery. AR 325.

Dr. Beauchman, Plaintiff's treating orthopedist, submitted an opinion dated September 22, 2020 which opined on the impact of Plaintiff's left knee impairment. AR 407–10. Dr. Beauchman opined that Plaintiff could never lift any weight; could not walk one block or climb steps without a handrail; had problems with balancing, crouching, stooping, and bending; could sit through a full 8-hour workday; could stand and walk one hour and would need unscheduled breaks for 10 minutes every hour.

Plaintiff also has spinal impairments about which no physician opined, to wit: degenerative discopathy with disc bulging and central canal narrowing at L3-4 and L4-5 per an August 2018 MRI (AR 382), and S1 radiculopathy per a July 2019 EMG and NCV studies. AR 387. Plaintiff rated his pain as an 8 to 10 out of 10 and was treated with narcotics. *See, e.g.*, AR 337.

Plaintiff makes a number of interrelated contentions in his first claim. He contends that the

DDS physicians did not have an opportunity to review a complete medical file, that the record was substantially underdeveloped at the point the DDS physicians reviewed his file, and that their opinions were outdated by the time the ALJ issued his decision. As such, he contends the ALJ should have ordered a consultative examination or otherwise consulted with a medical expert.

Simply put, the DDS physicians did all they could do: they reviewed the records that existed at the time of their review. As is often the case, there was a substantial gap in time between the DDS physicians' review at the initial/reconsideration levels and the ALJ's subsequent decision. During this gap period Plaintiff continued pursuing care and additional medical records were generated. However, this does automatically trigger the ALJ's duty to develop the record further with a consultative examination. *See* 20 C.F.R. § 404.1519a. (stating that a consultative examination "may" be purchased by the agency, not that it must be purchased in every case).

An ALJ is almost always tasked with performing some independent review of medical evidence that was never considered by one of the agency's reviewing physicians and thereafter translating the same into an RFC. This is consistent with the ALJ's role as characterized by the Ninth Circuit. *See Rounds v. Comm'r of Soc. Sec.*, 807 F.3d 996, 1006 (9th Cir. 2015), ("[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC.").

Moreover, there is no controlling case law imposing a hard and fast limitation on the permissible scope of an ALJ's independent medical record review. Cases addressing this issue do, however, frown upon an ALJ independently interpretating "raw medical data" such as complex imaging and laboratory testing results, particularly where such records are generated following a new injury not previously considered by the DDS physicians. *See, e.g.*, *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) (ALJ formulated claimant's residual functional capacity based on magnetic resonance images without the benefit of any medical opinion about the functional limitations attributable to the impairments depicted in the images); *Goodman v. Berryhill*, No. 2:17-CV-01228

CKD, 2019 WL 79016, at *5 (E.D. Cal. Jan. 2, 2019) (finding that the ALJ erred in adopting state agency consultants' opinions which were rendered before "plaintiff sustained a fall in November 2014" and before "an April 2015 MRI of the lumbar spine [which] showed L1 compression deformity with worsened kyphosis . . .").

Here, the records in question are similar to the above-cited cases, namely MRI results and EMG/NCV results, some of which were generated after an intervening injury when Plaintiff fell off a motorcycle. Although there were medical opinions regarding the functional limitations attributable to Plaintiff's knee impairments (the DDS physicians as to the right knee, and Dr. Beauchman as to the left knee), no physician opined as to the collective impact of both knee impairments. Moreover, no physician opined on the limitations attributable to Plaintiff's spinal stenosis and S1 radiculopathy per the MRI and EMG/NVC. It is also worth noting that the ALJ rejected Dr. Beauchman's opinion in part because it was "at odds with the objective medical record." AR 24. Again, no other physician opined on the objective medical records of the left knee impairment. Thus, any conclusions the ALJ reached regarding what those objective medical records did or did not show was an independent conclusion uninformed by a medical expert. In that respect, the ALJ erred.

The Court nevertheless finds the error harmless as it is clear from the record that it was inconsequential to the non-disability determination. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). It was inconsequential because the ALJ identified other independently sufficient reasoning in support of the RFC more generally, and for rejecting Dr. Beauchman's specifically, reasoning which would apply with equal force irrespective of any contrary opinion by a consultative examiner had the ALJ ordered such an examination.

The ALJ noted that Plaintiff fell of a motorcycle in March 2020 as reflected in a treatment note. AR 19 (citing AR 322), The ALJ repeated that fact at multiple times throughout the decision

in bold and underlined text.  The ALJ in particular took issue with Plaintiff's lack of candor when asked during the hearing whether he was able to ride a motorcycle since 2016, and he said he was unable to do so:

> Considering the physical exertional capabilities necessary to operate a motorcycle, it is understandable why the claimant would not readily admit to riding a motorcycle in late February or early March of that same year, 2020. Particularly the obvious need for anyone operating a motorcycle to use their bilateral lower extremities, including their knees, to balance and partially support themselves and the motorcycle, every time the rider stops.

AR 19 (citing AR 45).

The ALJ also cited motorcycle riding among Plaintiff's other "robust activities of daily living, including cleaning, cooking, driving," activities which "eliminate any doubt that he is fully capable of consistently performing substantial gainful activity, commensurate with the jobs identified by the vocational expert."  AR 28.

As to the motorcycle riding, Plaintiff observes that the treatment note mentioning the same is devoid of context in that it does not indicate whether he was the driver or passenger, and does not indicate that the incident was anything more than a one time (clearly failed) attempt at motorcycle riding.  The point is not well taken.

Granted, one failed attempt at motorcycle riding would not qualify as a "daily activity" in the strictest sense.  Moreover, riding a motorcycle as a rider or passenger does not permit the inference that the individual is exceptionally able bodied in all respects.  Nevertheless, it reasonably supports the conclusion that Plaintiff was capable of meeting the modest physical demands of light work with the additional restrictions assessed by the ALJ  *See*, *Valentine v. Commissioner Social Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009) (finding the ALJ satisfied the "clear and convincing" standard where claimant engaged in "gardening and community activities . . . evidence [which] did not suggest Valentine could return to his old job," but "did suggest that Valentine's later claims about the severity of his limitations were exaggerated.").  The motorcycle riding also supports the

ALJ's rejection of Dr. Beauchman's opinion that Plaintiff's left knee impairment caused extensive work preclusive physical limitations in nearly every respect. *See id.*

The ALJ's reasoning was somewhat bolstered by the other activities of daily living Plaintiff reported:

> Notably, in his Exertional Activities Questionnaire (Ex. 3E) the claimant reported that he is able to do some cleaning, sometimes cook, help take care of four children, walk to the mail box and back, lift grocery bags but not for very long, carry milk or a bag of potatoes but his knee hurts after, fold blankets and vacuum the floor, drive a car in town, and mow the lawn. During the hearing, the claimant testified that he is able to drive to appointments and lay down during the day and live with his spouse and children.

AR 21.

There are certainly a few issues to quibble with in the ALJ's reasoning. Most obviously, "lay[ing] down during the day and living with his spouse and children" are not robust daily activities. The former is about as far from robust as one can get. The latter simply establishes that he cohabitates with other family members, a fact sometimes cited in a misguided attempt to refute the existence of social interaction limitations, limitations not at issue here in any event. Nevertheless, the ALJ cited other activities including: cooking; cleaning; caring for his children; carrying grocery bags, milk, and a bag of potatoes (albeit of an unspecified weight, and with knee pain); driving a car in town; and mowing the lawn. AR 21.

Plaintiff contends the ALJ relied on outdated evidence as to his activities of daily living insofar as they were derived from an exertional activities report dated March 2018 which Plaintiff completed before many of the relevant records were generated and before his motorcycle accident of March 2020. Plaintiff's testimony at the administrative hearing in October 2020 was more tempered, and he did not readily admit to the ability to perform those activities at least as of the hearing date. The testimony was, however, somewhat internally inconsistent and inconsistent with the March 2018 exertional report. The testimony suggests that the onset of knee symptoms

prohibiting the performance of any household chores dated back to 2016 (AR 43-44), but his March 2018 exertional report refutes that suggestion.

As stated a above, the Plaintiff's testimony was also somewhat internally inconsistent. After some back and forth about the nature and onset of his restrictions in daily activities, the ALJ asked "Are there any other things that you can do, been able to do since the end of 2016 around the house, lifting and carrying things, preparing food, preparing meals, you know, mowing the lawn, getting anything like that since 2016?" to which Plaintiff responded "yes." AR 44. The phrasing of the ALJ's question was overly broad, compound and imprecise to be sure in that Plaintiff's affirmative response (strictly construed) establishes only that there was at least one thing around the house he could do since 2016, and that one thing did not necessarily come from the ALJ's list of representative examples. This contrasts, however, to Plaintiff's negative response to an equally broad question earlier in the transcript in which the ALJ asked, "do you do *any* household activities like chores or cooking, anything like that?" AR 41.

To the extent Plaintiff maintains that there was a distinct period of time within the relevant period of his claim during which he was unable to perform the above-cited activities of daily living, he has not sufficiently established that fact. Although the ALJ was partially at fault for the meandering imprecise nature of the questions and answers during the hearing, the impetus was on counsel to clarify the record on re-direct examination and present a more cogent argument on appeal.

Moreover, the ALJ noted that Plaintiff reported physical therapy was helping his knee pain as of January 2019, his pain was reportedly well controlled as of January 2020, and his providers noted he reported cooking, driving, bathing, and dressing in January 2019, February 2019, and May 2020. AR 19 (citing AR 316, 321, 337, 364, 367). These records, coupled with his exertional activities report of March 2018, his motorcycle riding attempt as of March 2020, and his equivocal

testimony as to the onset of his limitations tend to undermine the notion that there was any distinct period of time within the relevant period during which Plaintiff was incapable of meeting the modest physical demands of light work with the additional restrictions assessed by the ALJ.

Although one might argue that one motorcycle ride and the other cited activities may seem somewhat benign, it bears repeating that those activities need not (and do not) refute the existence of Plaintiff's objective knee and spine abnormalities, nor do those activities establish an exceptionally high level of functioning. But that evidence is sufficiently substantial to support the RFC and to support the ALJ's rejection of Dr. Beachman's opinion that Plaintiff had essentially no capacity to perform any exertional activities included lifting any amount of weight,  or walking one block without rest or severe pain. *See Valentine*, 574 F.3d at 693.

Finally, the ALJ's reasoning for rejecting Dr. Beauchman's opinion was buttressed to some extent by an additional fact. Despite identifying extensive limitations, Dr. Beauchman answered "no" to question number 20 which asked, "Do you believe, within a reasonable degree of medical certainly, that your patient, because of his/her medical impairments and physical and/or mental limitations, is unable to obtain and retain work in a competitive work environment, 8 hours per day, 5 days per week for a continuous period of six months or more?" AR 410. The ALJ repeatedly cited this fact with emphasis. To clarify, the Court does not believe that Dr. Beauchman's response to question 20 should be read in isolation, or read to suggest he does not believe Plaintiff is disabled. It was quite likely an inadvertent mistake.[3]

These type of mistakes are common. If mistakes such as that were dispositive it would severely undermine the ability of a deserving claimant to obtain disability benefits based on a well-supported treating physician's opinion, opinions which are often hastily prepared, somewhat

---

[3] Question 20 could have easily been phrased slightly differently by replacing the word "because" with "given," and by replacing the word "unable" with "able," in which case a negative response would be indicative of disability.  A reader who quickly skims the question could inadvertently provide the opposite response intended.

illegible, and partially incomplete. Nevertheless, the mistake does undermine the force of Dr. Beauchman's other responses to some extent insofar as it suggests a lack of conscientiousness and attention to detail in reading and understanding the questions asked. It was far from a dispositive fact, but was appropriate to cite as an additional reason to reject the opinion.

Thus, the ALJ did not commit harmful error in failing to order a consultative examination, or in rejecting Dr. Beauchman's opinion.

### VI.     Conclusion and Order

For the reasons stated above, the Court finds that substantial evidence and applicable law support the ALJ's conclusion that Plaintiff was not disabled. Accordingly, Plaintiff's appeal from the administrative decision of the Commissioner of Social Security is denied. The Clerk of Court is directed to enter judgment in favor of Defendant Kilolo Kijakazi, acting Commissioner of Social Security, and against Plaintiff Randy Allen Ashlock.

IT IS SO ORDERED.

Dated:  **June 25, 2022**               **/s/ Gary S. Austin**
                                         UNITED STATES MAGISTRATE JUDGE